Wayne Edward HOUCK, Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY, Defendant.

No. 02–10292–BC.

United States District Court,
E.D. Michigan,
Northern Division.

March 8, 2005.

Wayne Edward Houck, Twining, MI, pro se.

Robert W. Haviland, U.S. Attorney's Office, Flint, MI, for Defendant.

***OPINION AND ORDER REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING TO THE SOCIAL SECURITY COMMISSION FOR AN AWARD OF BENEFITS***

LAWSON, United States District Judge.

The plaintiff acting *pro se* filed the present action on November 11, 2002 seeking review of the Commissioner's decision denying the plaintiff's claim for child insurance benefits based on the earnings record of a deceased wage earner under Title II of the Social Security Act. The case was referred to United States Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Thereafter, the plaintiff filed a motion for summary judgment to reverse the decision of the Commissioner and award him benefits. The defendant filed a motion for summary judgment requesting affirmance of the Commissioner's decision. Magistrate Judge Binder filed a report and recommendation on January 27, 2004 recommending that the plaintiff's motion for summary judgment be denied, the defendant's motion for summary judgment be granted, and the findings of the Commissioner be affirmed. The plaintiff filed timely objections to the recommendation, and this matter is now before the Court.

The Court has reviewed the file, the report and recommendation, and the plaintiff's objections and has made a *de novo* review of the administrative record in light of the parties' submissions. The issue in this case is whether the plaintiff is eligible to receive child insurance benefits on the earnings record of his deceased grandfather, Arnold Houck. Under Section 402(d) of Title 42 of the United States Code, a person is eligible for child insurance benefits if that person files an application, is unmarried and under 18 years of age or suffers from a disability incurred before reaching age 22, and was dependent upon an eligible wage-earner who died, became disabled, or was entitled to old age insurance. The Social Security Act defines "child" to include the grandchild of an eligible wage-earner if the child is orphaned at the time the wage-earner becomes eligible for benefits under the Act. *See* 42 U.S.C. § 416(e)(3). However, if the person seeking child benefits intends to rely on the eligibility of a grandparent, the Act requires that "such child was living with such individual in the United States and receiving at least one-half of his support from such individual" during the one-year period immediately before the grandparent "became entitled to old-age insurance benefits or disability insurance benefits or died," and "the period during which such child was living with such individual began before the child attained age 18." 42 U.S.C. § 402(d)(9)(A).

The plaintiff, presently thirty-nine years old, applied for child insurance benefits as a surviving grandchild of Arnold Houck on December 1, 1998 when he was thirty-three years old. The plaintiff's involvement with the Social Security Administration dates back several decades. In May of 1966, the plaintiff became entitled to child insurance benefits based on his father's insured status following the death of his parents in automobile accident. Thereafter, the plaintiff lived with his paternal

grandparents, and before he reached the age of twenty-two the plaintiff was himself determined to be disabled within meaning of the Social Security Act. In November of 1972, the plaintiff's grandfather became entitled to disability insurance benefits, and in August of 1978 he became entitled to retirement insurance benefits. Arnold Houck died on July 1, 1981.

In his application for benefits, plaintiff Wayne Houck alleged that he had lived with his paternal grandparents since the time of his parents' death until June 27, 1981, the day he moved out, and that his grandfather had provided him with at least half of his financial support during that time. The application was denied initially and on reconsideration at the agency level. Although the plaintiff was found to have met all the age, residency, and relational requirements, it was determined that during the relevant periods the plaintiff was not receiving at least one-half of his support from Arnold Houck. The plaintiff filed a timely request for a hearing. On November 30, 2000, the plaintiff appeared before Administrative Law Judge (ALJ) William J. Musseman. The plaintiff was advised of his right to have legal assistance but chose to proceed on his own behalf, although he had the assistance of a mental health caseworker. On February 7, 2001, the ALJ filed a decision in which he considered the question of Arnold Houck's support of the plaintiff during three separate periods. Arnold Houck became entitled to disability insurance benefits in November 1973, retirement (old age) benefits in August 1978, and he died on July 1, 1981. The ALJ therefore considered the amount of Arnold's contribution to Wayne's support for the one-year periods preceding each of these events, as an appropriate finding during any one of them would have entitled Wayne to benefits on his grandfather's earning record. However, the ALJ found that Arnold's contribu-

tion to Wayne's support did not exceed one-half of the total during any of the periods, and he denied the plaintiff's application.

The plaintiff sought review by the Appeals Council, which denied relief on September 17, 2002. The Council found that the ALJ erred by failing to consider certain pension income received by the plaintiff's grandfather between August 1977 and June 1981, but that sum did not affect the outcome because it did not increase to one-half the amount that Arnold contributed to Wayne's support.

The plaintiff filed the present action, and in his motion for summary judgment he agreed that the ALJ applied the correct law and used the proper income figures in reaching his result. However, the plaintiff argues that the method of calculating the amount he contributed to his own support was erroneous, and when the method he advocates is used, his grandfather's contribution becomes greater than one-half.

■■■ The Court's task in reviewing a Social Security child benefits determination is a limited one. The ALJ's findings are conclusive if they are supported by substantial evidence, according to 42 U.S.C. § 405(g). Consequently, the Court's review is confined to determining whether the correct legal standard was applied, and whether the findings are supported by substantial evidence on the whole record. *See Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir.2003). " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Kirk v. Sec. of Health & Human Servs.,* 667 F.2d 524, 535 (6th Cir.1981) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). The reviewing court must affirm the Commissioner's

findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997).

In recommending that the decision of the Commissioner be affirmed, the magistrate judge noted that the ALJ used the "pooled-fund" method of evaluating support. "This method creates a rebuttable presumption that all income coming into a household is pooled for the support of the household and that each member of the household shares equally in the funds used for support." *Drombetta v. Sec. of Health and Human Servs.*, 845 F.2d 607, 609 (6th Cir.1987). During the relevant time periods, there were either four or five individuals, including the plaintiff, living in the household, and the plaintiff's grandmother, Pearl Houck, averred that all the income was pooled to pay living expenses. *See* tr. at 38–39. The family income consisted primarily of Social Security benefits received by Arnold, Pearl and Kathy Houck. The plaintiff himself also was receiving Social Security child benefits based on the earnings record of his deceased father. For each of the three periods, the amount that the plaintiff contributed to the family pool exceeded the share of the pool that would have been available for his support. So, the ALJ reasoned, no single household member, including Arnold, contributed one-half or more of the available household funds to the plaintiff's support.

For instance, during the first relevant period, November 1972 through October 1973, Arnold's total income was $5,642.75. Wayne received $1,788.00 in Social Security benefits, making the total household income $7,430.75. In addition to Wayne and his grandfather, the household consisted of Arnold's wife and his two minor children; therefore the ALJ calculated that one-fifth of the total, or $1,486.15, was available for the support of each person. The ALJ reasoned that since the plaintiff's own income was more than the one-fifth allocation for his support from the family income, Arnold's contribution to his support could not amount to more than half his total support.

The plaintiff disputes this reasoning. He says that the flaw is that it ignores the fact that Social Security benefits he received were added to the household's total income. Consequently, the amount of support he received from those benefits was only one-fifth of its total, or $357.60, demonstrating that he in fact received most of his support from his grandfather. Under that rationale, the plaintiff is correct: one-fifth of the total amount Arnold contributed to the household—the amount allocated to the plaintiff under the pooled-fund method—was $1,128.35. The plaintiff's handwritten objections to the magistrate judge's recommendation repeat this contention.

The pooled-fund method was approved by the Sixth Circuit in *Drombetta v. Secretary of Health and Human Services*, a case involving a question of eligibility for widow's insurance in a two-person household. The issue in that case was the same as in the present matter: whether the claimant derived more than half her support from the deceased insured wage-earner. *See* 845 F.2d at 607–08. The question of applying the pooled-fund method in a multi-person household was addressed by the Fourth Circuit in *Jepson v. U.S. Dept. of Health & Human Servs.*, 977 F.2d 911 (4th Cir.1992), where, in a split decision, the court held that it was proper for the Commissioner to pool all the household income to determine the amount available for the support of each member but view the claimant's income as available only to her when determining whether she derived more than half her support from the de-

ceased wage-earner. The court reasoned that the Secretary's regulation found at 20 C.F.R. § 404.366(b) permits this result. *Id.* at 914 (quoting regulation, which states that the Commissioner "will consider any income which is available to you for your support whether or not that income is actually used for your ordinary living costs"). The dissenting judge in *Jepson* took issue with the majority's reasoning. He observed:

> When a family consists of only two wage earners, the assumption is reasonable. [citing *Drombetta* ] .... But it is unreasonable to make that assumption where, as here, there are other dependents.... It is clear that the combined small incomes of a family such as the Jepsons must be entirely consumed by the maintenance of all members of the family. To decree by administrative fiat that the husband's income is to be considered as supporting the whole family while that of the wife is considered hers alone is, in and of itself, arbitrary and capricious.

*Id.* at 915.

Other courts that have considered the validity of the pooled-fund method have focused on whether the deceased insured's in-kind household contributions should be calculated in accounting for the one-half support determination, or dealt with the question in the context of a two-person household. *See Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir.2004); *Pagter v. Massanari*, 250 F.3d 1255, 1261 (9th Cir.2001); *Batista v. Sullivan*, 882 F.2d 1480, 1481 (9th Cir.1989). These decisions stake their foundation on *Drombetta.*

The same regulation that governs the calculation of support for widow's insurance, 20 C.F.R. § 404.366(b)—that is the regulation considered by the court in *Jepson*—applies in the case of child's insurance. That regulation states in part: "We will consider any income which is available to you for your support whether or not that income is actually used for your ordinary living costs. Ordinary living costs are the costs for your food, shelter, routine medical care, and similar necessities." The Court believes, however, that *Drombetta* does not permit rote application of that regulation to *require* in all cases that a claimant's income be deemed available for the support of him and him alone in a multi-person household when determining whether he received more than half his support from an insured wage-earner. Rather, *Drombetta* declared that the pooled-fund method created "a rebuttable presumption" for the allocation of income. *Drombetta*, 845 F.2d at 609. "This presumption is rebutted by evidence that the household income was not pooled or evidence indicating that all income for support was not shared equally." *Ibid.* Therefore, although the pooled fund-method taken together with Section 404.366(b) allows the Commissioner to start with the presumption that each household member shared equally in the income of the household and the claimant's income is used for his ordinary living costs, that presumption may be dispelled by contrary evidence.

In this case, the only evidence in the record comes from the plaintiff's grandmother, who said that the income from each member of the household, including the plaintiff, was pooled to pay household expenses. It is quite clear from this uncontradicted evidence that all of the plaintiff's Social Security income from his deceased father's earning record was not available for his ordinary living costs. Instead, it was used for the support of the other members of the household as well, and it entirely was consumed. Although the standard of review of an ALJ's decision is deferential, and the Commissioner's findings are conclusive if they are sup-

ported by substantial evidence, 42 U.S.C. § 405(g), if the Commissioner's determination is not supported by substantial evidence on the whole record, the administrative decision must be reversed and the case remanded for further action. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 242–43 (6th Cir.2002). Such is the case here. There was no error in initially applying Section 404.366(b) of the regulations to "consider" that the plaintiff's Social Security income was available only for his support, but that consideration must give way to evidence that dispels the presumption created by the regulation. *Drombetta,* 845 F.2d at 609. Persisting in the application of that presumption is not supported by substantial evidence in the record in this case.

█ Once the determination has been made that the Commissioner's decision is not supported by substantial evidence, the Court must decide whether further fact-finding is required. "[I]f all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits," this Court may remand for an award of benefits. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir.1994). *See also Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir.1985) (holding that in disability "cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking"). There are no further factual issues that require determination, and the plaintiff has demonstrated that he is entitled to Social Security child benefits based on the earning record of his deceased grandfather, Arnold Houck. The record shows that for the one-year period preceding Arnold Houck's qualification for Social Security disability benefits, he provided more that one-half of the plaintiff's support.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation is **REJECTED.**

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt # 11] is **GRANTED.**

It is further **ORDERED** that the defendant's motion for summary judgment [dkt # 12] is **DENIED.** The findings of the Commissioner are **REVERSED,** and the matter is **REMANDED** for an award of benefits.