**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 11 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BETTY L. NEIKIRK, as
representative plaintiff for Lisa M.
Neikirk,

        Plaintiff - Appellant,

      v.

LARRY G. MASSANARI,[*] Acting
Commissioner of the Social Security
Administration,

        Defendant - Appellee.

No. 00-1459
(D. Ct. No. 99-K-1907)
(D. Colo.)

**ORDER AND JUDGMENT**[**]

Before **TACHA**, Chief Judge, **ANDERSON**, and **MURPHY**, Circuit Judges.

      Appellant Betty L. Neikirk as Representative for Lisa M. Neikirk appeals

the district court's decision affirming the final determination by the

Commissioner of Social Security terminating Lisa Neikirk's supplemental

---

[*]On March 29, 2001, Larry G. Massanari became the Acting Commissioner
of Social Security. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Massanari is substituted as the appellee in this action.

[**]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

security income.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.  Background

In 1985, Lisa Neikirk was found to be an incapacitated person in need of a guardian.  Her parents, Betty and Russell Neikirk, were appointed joint guardians.  On November 29, 1994, Mr. Neikirk (a retired U.S. Postal Service employee) died.  Prior to her father's death, Lisa had been receiving supplemental security income ("SSI") based on a disability under Title XVI of the Social Security Act ("the Act") and disabled adult child ("DAC") benefits under Title II of the Act.  In 1995, she was also found eligible for Civil Service Retirement System ("CSRS") annuity payments as the disabled child of a deceased federal employee.

At first, the Office of Personnel Management ("OPM"), which manages CSRS annuity payments, paid the CSRS monthly benefit to Mrs. Neikirk directly as Lisa's guardian pursuant to the requirements of 5 U.S.C. § 8345(e) (authorizing OPM to pay an annuity benefit on behalf of a person with legal disabilities to "a guardian or other fiduciary").  On May 25, 1995, the Social Security Administration ("SSA") advised Lisa that the CSRS benefit was countable unearned income and, when combined with her DAC benefit and her small monthly wages, disqualified her from continuing to receive SSI benefits.

In response, in June of 1995, Mrs. Neikirk established the Lisa M. Neikirk Supplemental Needs Trust for the sole benefit of Lisa M. Neikirk ("the Trust"). Mrs. Neikirk, the trustee of the Trust, then asked OPM to pay Lisa's CSRS benefits to Mrs. Neikirk as trustee of the Trust rather than as guardian of Lisa Neikirk. OPM granted the request and the annuity has since been paid to Mrs. Neikirk as trustee.

On July 20, 1995, the Bridge Community, Lisa's representative SSI payee, asked the SSA to reconsider its decision to terminate Lisa's SSI benefits arguing that, as the CSRS benefits were now being paid to the Trust, they were no longer countable unearned income to Lisa. In November 1996, the SSA denied the request citing the SSA's Program Operations Manual System ("POMS") which states that CSRS payments are not assignable to a trust. The Bridge Community then requested a hearing before an administrative law judge. The ALJ ruled in favor of the SSA and the Appeals Council's denial of review of the ALJ decision made the termination of Lisa's SSI benefits a final agency action for purposes of judicial review. See 20 C.F.R. § 416.1481. Mrs. Neikirk then filed this action in district court. The district court held in favor of the SSA and this appeal followed.

II. Analysis

"We review the district court's decision de novo and therefore must

independently determine whether the agency's decision (1) is free of legal error and (2) is supported by substantial evidence." Brown v. Callahan, 120 F.3d 1133, 1135 (10th Cir. 1997) (internal quotation marks and brackets omitted). The facts in this case are not in dispute by the parties. Our review of the SSA's determination is therefore narrow. The only question is whether the SSA's determination that Lisa's CSRS benefits are countable unearned income pursuant to the Act is free of legal error.

In this case, the SSA relied on guidelines set forth in the POMS which describe how the SSA is to determine countable unearned income for the purpose of SSI eligibility. Here, the pertinent POMS provides as follows:

> Certain payments are non-assignable by law, and, therefore, are income to the individual entitled to receive the payment under regular income rules. They may not be paid directly into a trust, but individuals may attempt to structure trusts so that it appears that they are so paid. Non-assignable payments include . . . Federal employee retirement payments (CSRS, FERS) administered by the Office of Personnel Management.

POMS SI 01120.200G.1.c. In determining whether a particular agency decision is free of legal error, we accord a high level of deference to the agency's interpretation of the statutes and regulations it administers. McNamar v. Apfel, 172 F.3d 764, 766 (10th Cir. 1999). The agency's interpretation "is given controlling weight unless it is arbitrary, capricious, or contrary to law." Id. We have previously applied this standard of deference to the SSA's POMS. Id. at 767 (holding that the "agency's interpretation . . . as enunciated in the POMS, is

- 4 -

[not] arbitrary or capricious"); <u>Henningson v. Dir.</u>, 194 F.3d 1320, 1999 WL 728061, at *4 (10th Cir. Sept. 16, 1999) (unpublished disposition) ("Although the POMS is not legally binding, we give controlling weight to the agency's interpretation of its own regulation unless it is arbitrary, capricious, or contrary to law." (citations omitted)); <u>accord</u> <u>Bubnis v. Apfel</u>, 150 F.3d 177, 181 (2nd Cir. 1998) (holding that the POMS deserves "substantial deference, and will not be disturbed as long as . . . reasonable and consistent with the statute."); <u>Davis v. Secretary of Health and Human Servs.</u>, 867 F2d 336, 340 (6th Cir. 1989) (stating that though the POMS lacks the force of law, it is persuasive). Therefore, unless we find that the SSA's interpretation of the Act as enunciated in the POMS—that CSRS benefits are counted unearned income for the purposes of determining SSI benefits—is arbitrary, capricious or contrary to the law, we must affirm the agency determination.

"Title XVI of the [Social Security] Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program." <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987). Thus, SSI is a needs-based program. A claimant who is medically eligible for SSI must further establish a financial need to qualify. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202(c), (d). The SSA regulations define income for SSI purposes as "the receipt by an individual of any property or service which he can apply, either

- 5 -

directly or by sale or conversion, to meeting his basic needs." 20 C.F.R. §
416.120(c)(2). In other words, anything the individual receives "in cash or in
kind that [he] can use to meet [his] needs for food, clothing, and shelter." 20
C.F.R. § 416.1102. We have held that Congress mandates that SSI be paid to
claimants "'only to the extent that their needs are not met from other sources,
including . . . payments by other agencies.'" Ryder v. Shalala, 25 F.3d 944, 947
(10th Cir. 1994) (quoting H.R. Rep. No. 92-231, at 149-50 (1971)). The Act
further mandates that the Commissioner count as income "any payments received
as an annuity, pension, retirement or disability benefit." 42 U.S.C. §
1382a(a)(2)(B). Here, Mrs. Neikirk argues that Lisa's CSRS annuity benefits are
not payable to Lisa, but rather to the Trust, and are thus not within the Act's
definition of income. However, as is made clear by the POMS, the SSA has
interpreted the Act to include as income any payment that is non-assignable by
law, specifically including CSRS annuity benefit payments, even if "individuals .
. . attempt to structure trusts so that it appears that [the CSRS benefits] are [paid
into a trust]." POMS SI 01120.200G.1.c.

Were the POMS incorrect about the assignability of CSRS annuity
benefits, Mrs. Neikirk's argument may have merit. As it is, however, the POMS
correctly states the law with regard to the assignability of the payments.
Specifically, 5 U.S.C. § 8346(a) states: "The money mentioned by this [civil

- 6 -

service retirement] subchapter is not assignable, either in law or equity, except under the provisions of subsections (h) and (j) of section 8345 of this title." There is no dispute that Lisa's CSRS benefits are not being assigned pursuant to subsection (j) of section 8345. Further, while subsection (h) of section 8345 authorizes assignments for purposes considered appropriate by OPM, the implementing regulations crafted by OPM have limited subsection (h) assignments exclusively to organizations. 5 C.F.R. § 831.1501, 831.1511.

Mrs. Neikirk argues, however, that 5 U.S.C. § 8345(e) authorizes OPM to make the CSRS benefit payments to Lisa's guardian or "other fiduciary", i.e., Mrs. Neikirk as trustee of the Trust. Mrs. Neikirk further points out that, pursuant to such authorization, OPM actually does make Lisa's CSRS payments to her as trustee of the Trust. However, the fact that OPM has agreed to Mrs. Neikirk's request to make the CSRS benefit payments payable to Mrs. Neikirk as trustee rather than as guardian cannot eviscerate the plain language of 5 U.S.C. § 8346 restricting assignments of CSRS benefit payments. As neither of the exceptions to the non-assignability of CSRS benefits articulated in section 8346 allow for the assignment to a trust, Lisa's CSRS benefits remain non-assignable by law. Moreover, the subsection relied upon by Mrs. Neikirk, 5 U.S.C. § 8345(e), is not articulated as an exception to the non-assignability rule. 5 U.S.C. § 8346. "It is a general rule of statutory construction that if a statute specifies

exceptions to its general application, other exceptions not explicitly mentioned are excluded." St. Charles Inv. Co. v. Comm'r of Internal Revenue, 232 F.3d 773, 776 (10th Cir. 2000) (internal quotation marks omitted).

Therefore, the POMS relied on by the SSA in making its determination in this case is a reasonable interpretation of the appropriate statutes and regulations at issue here. Mrs. Neikirk has failed to demonstrate that the POMS is either arbitrary, capricious, or contrary to the law. As such, we hold that the decision of the SSA that Lisa's CSRS annuity benefits are countable unearned income for the purposes of determining SSI eligibility is free of legal error and is supported by substantial evidence. AFFIRMED.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge